UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

SOUTHAMPTON BRICK AND TILE, LLC,

Debtor.
-------------------------------------------------------X

Chapter 11

Case No. 11-75928

**MEMORANDUM DECISION AND ORDER**

*Appearances:*

Zinker & Herzberg, LLP
*Attorneys for movant and creditor Wainscott Commercial Center, LLC*
278 East Main St., Suite C
P.O. Box 866
Smithtown, NY 11787
By: Jeffrey Herzberg, Esq.

Wuersch & Gering, LLP
*Attorneys for petitioning creditors*
100 Wall St., 10th Floor
New York, NY 10005
By: Francesco DiPietro, Esq.

Ruskin Moscou Faltischek
*Attorneys for Debtor and Debtor-in-Possession*
1425 RXR Plaza
Uniondale, NY 11556
By: Michael Amato, Esq.

Office of the United States Trustee
Long Island Federal Courthouse
560 Federal Plaza
Central Islip, NY 11722
By: Stan Yang, Esq.

Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

**Issue**

Whether creditor Wainscott, as the party moving for disqualification of debtor-in-possession counsel, has met its burden of showing that Ruskin Moscou Faltischek, counsel for the debtor-in-possession in the case of Southampton Brick and Tile, LLC, has a disabling conflict of interest, such as would preclude it from representing the debtor-in-possession.

Wainscott has not met its burden of showing that RMF has a disabling conflict of interest, so as to preclude it from representing the debtor-in-possession, for the reasons discussed below.

**Background**

The following facts are taken from the papers submitted by the parties, as well as other materials docketed with this Court. The facts are undisputed, except where otherwise indicated.

I. The bankruptcy filing:

Southampton Brick and Tile, LLC, the debtor in this case ("Debtor"), has been primarily in the business of selling ceramics, brick, tile, and related materials for use in construction. Debtor's principal geographic area of operations has been Long Island. The recent economic downturn produced a corresponding downturn in the Long Island construction market, which in turn took a considerable toll on Debtor's business and financial stability. Thus, on August 18, 2011, a group of Debtor's creditors came together and filed in this Court a petition for the involuntary bankruptcy of the Debtor, under Chapter 7 of Title 11 of the U.S. Code (the "Bankruptcy Code"). On September 22, 2011, on motion of the Debtor, this Court converted the case to one under Chapter 11 of the Bankruptcy Code. The Debtor operates as a fiduciary of the estate herein as debtor-in-possession.

II. The Litigation Proceeds:

Prior to the bankruptcy filing, substantial and ongoing litigation ensued between the equity stakeholders in Southampton Brick and Tile Corporation ("SBTC"), which was the predecessor in interest to the Debtor (the "SBTC Litigation"). As a result of the SBTC Litigation, the Debtor ultimately became entitled to litigation proceeds of about $1.67 million (the "SBTC Litigation Proceeds").

Additionally, as a result of certain litigation involving the Debtor and Suffolk National Bank (the "SNB Litigation"), the Debtor became entitled to litigation proceeds of about $223,568 (the "SNB Litigation Proceeds," and collectively with the SBTC Litigation Proceeds the "Litigation Proceeds"). The Debtor has taken possession of the Litigation Proceeds.

III. 4B's Realty VIII and Bert Brodsky.

One of the Debtor's equity stakeholders is an entity called 4B's Realty VIII ("4B"), which holds 50% of the equity ownership of the Debtor. An individual named Bert Brodsky ("Brodsky"), in turn, owns 50% of the equity in 4B, and is also an "indirect principal" of the Debtor. 4B made a series of loans to the Debtor, in return for which 4B obtained a security interest in all of the Debtor's assets, including the Litigation Proceeds.

IV. The retention of RMF as legal counsel to the debtor-in-possession.

On January 23, 2012, this Court authorized the Debtor to employ Ruskin Moscou Faltischek ("RMF") as general legal counsel for the bankruptcy estate herein. Brodsky, as part of the Debtor's initial application for permission of this Court to retain RMF, disclosed by affidavit that "RMF has had a long term relationship with Bert E. Brodsky, an indirect principal of the Debtor, and provides [Brodsky] and the entities of which he is a part, a fifteen (15%) percent

discount of RMF's prevailing rates."[1] Similarly, RMF, in its affidavit in support of Debtor's application to employ it, disclosed that "Bert E. Brodsky is a long-standing client of [RMF] and he is an indirect principal of the Debtor. [RMF's] policy is to provide Mr. Brodsky and his entities with" the aforementioned 15% discount. It was also disclosed that, pre-petition, RMF had represented the Debtor in connection with ultimately failed negotiations between the Debtor and certain of its unsecured creditors.

Moreover, an individual named Kenneth Faltischeck ("Kenneth") has represented 4B as far back as November of 2004. Currently, Kenneth is general counsel for Sandata Technologies, LLC, an entity which Brodsky controls. Kenneth has never been formally associated with RMF. However, Kenneth is the son of Michael Faltischeck ("Michael"), a partner at RMF. Neither the father-son relationship between Michael and Kenneth, nor Kenneth's connections to 4B or Sandata, were disclosed in any of the materials accompanying the Debtor's application to employ RMF.

V. Wainscott.

Most of the Debtor's creditors have taken a low-key approach with respect to their interest in this case, except for Wainscott Commercial Center, LLC ("Wainscott"), the Debtor's former commercial lessor. Wainscott has participated vigorously, and has filed multiple motions, all based upon the same core facts, and most of which are directed against 4B's asserted security interest in the Litigation Proceeds.

*A. Wainscott's motions to avoid 4B's security interest.*

Wainscott has asserted that 4B's security interest ought to be avoided, claiming that it is not properly perfected under state law. Initially, there were two formidable procedural obstacles

---

[1] Brodsky is presumably an "indirect principal" of the Debtor because he is a 50% stakeholder in 4B, which in turn is a 50% stakeholder in the Debtor. Brodsky is indeed an "insider" of the debtor under the Bankruptcy Code. *See* 11 U.S.C. § 101(14).

to Wainscott's ability to prevail here: (I) Federal Rule of Bankruptcy Procedure 7001(2) requires that such relief be sought by adversary proceeding, not by motion, as Wainscott has done; (II) Under 11 U.S.C. §§ 544(a) and 1107(a), the power to bring such an adversary proceeding is generally vested with the Debtor alone, so long as the Debtor continues to operate as debtor-in-possession. The second obstacle has been eliminated, because the Debtor has consented to Wainscott bringing the necessary adversary proceeding to avoid 4B's security interest. The first obstacle is now one of Wainscott's own making; Wainscott has yet to file the necessary adversary proceeding.

*B. Wainscott's motion to recharacterize 4B's claim from debt to equity*.

Wainscott has also objected directly to 4B's claim, primarily on the basis that the alleged debt owing to 4B should be recharacterized as an equity contribution to the Debtor and treated as such for purposes of this bankruptcy case.

On March 19, 2012, Wainscott moved this Court, among other things, to appoint an examiner in this case pursuant to 11 U.S.C. § 1104(c), so that the examiner might investigate the relationship and the dealings between Debtor and 4B, with an eye towards determining whether the alleged debt owing to 4B is, in substance, an equity contribution that ought to be treated as such for purposes of this bankruptcy case. RMF, on behalf of the Debtor, opposed this motion, primarily out of fear that the Debtor's estate would have to bear the cost of the fees, expenses, etc. that the examiner would charge. On May 11, 2012, this Court ordered the appointment of Robert S. Rosenfeld, CPA, as examiner in this case (the "Examiner"), with Wainscott, and not the Debtor's estate, to bear the costs.

The Examiner submitted his final report (the "Report") to this Court on June 15, 2012. The Report is fairly lengthy, but the essence of it is that there exist a number of factors in this

case, which tend to indicate that most or all of 4B's cash advances to the Debtor were, in substance, equity contributions that could be recharacterized as equity. However, this was a preliminary conclusion. A more definitive answer would require the Examiner to retain counsel so that he could effectively subpoena certain books, records, and other documents of the Debtor and 4B, which items the Debtor and 4B had not provided to the Examiner. (It is worth noting that the Debtor asserts that it has laid its books and records bare for the Examiner).

On September 17, 2012, this Court discharged the Examiner from his duties in connection with this case, on request of Wainscott.

*C. Wainscott's motion to disqualify RMF as counsel to the estate herein.*

After the discharge of the Examiner, Wainscott moved this Court to disqualify RMF as counsel to the Debtor in this bankruptcy case, under 11 U.S.C. § 327(a) and Federal Rule of Bankruptcy Procedure 2014 (the "Disqualification Motion"). Pursuant to Wainscott's motion papers, Wainscott is asserting that RMF possesses one or more conflicts of interest that, under the Bankruptcy Code, preclude it from representing the Debtor in this case. At a hearing held before this Court on September 20, 2012, the parties agreed to have the motion decided without oral argument, on the strength of the various papers which the parties have submitted.

## Discussion

I. The governing legal standards:

*A. 11 U.S.C. § 327 and "disabling" conflicts of interest.*

The debtor-in-possession, as the fiduciary of the debtor's bankruptcy estate, may, with Court approval, employ attorneys to represent it in carrying out its duties under the Bankruptcy Code. Attorneys for the estate must meet two criteria of overriding importance: The estate's

attorneys must: (1) Neither hold nor represent any interest which is adverse to the estate; (2) be "disinterested persons." 11 U.S.C. §§ 327(a), 1107(a).

The purpose of the requirements of § 327 is to assure that all professionals, including attorneys, working on behalf of the estate "tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." Once an attorney is retained by the estate, he or she "owes… allegiance to the [estate], and not to the [equity holders and other parties] connected with the [debtor]." *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994). In other words, § 327(a) is meant to avoid conflicts of interest on the part of the attorney for the estate. *See id.*

**1. Holding or representing an adverse interest.**

A party "holds" an adverse interest to the estate if it: (1) Possesses or asserts any economic interest that would (A) tend to lessen the value of the estate, or (B) create an actual or potential dispute in which the estate is a rival claimant; or (2) possesses a predisposition under circumstances that render a bias against the estate. *In re American Int'l Refinery, Inc.*, 676 F.3d 455, 461 (5th Cir. 2012). In other words, a party holds an "adverse interest" to the estate if it has some meaningful incentive to act contrary to the best interests of the estate as a whole, such as where it would be to the party's benefit to harm efforts to reorganize or dissolve the estate for the maximal benefit of all parties in interest. *See In re Palm Coast, Matanza Shores L.P.*, 101 F.3d 253, 258 (2d. Cir. 1996). A party "represents" an interest adverse to the estate if it acts as an agent or attorney for a party holding an adverse interest to the estate. *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985), *aff'd in part, rev'd in part on other grounds* 75 B.R. 402.

**2. "Disinterested person."**

The term "disinterested person" means an entity that: (A) is not a creditor, equity security holder, or insider of the debtor; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

Since Wainscott has not alleged that RMF meets the criteria set forth in (A) or (B) in the previous paragraph, the only grounds for it to assert that RMF is "not disinterested" consist of the existence of a "material adverse interest." Thus, the principal subject for discussion here is whether RMF holds or represents an adverse interest, material or otherwise, to the estate. *See* 11 U.S.C. §§ 101(14), 327(a).

**3. "Disabling" conflicts of interest.**

What constitutes a "disabling" conflict of interest, such as to preclude an attorney from representing the Debtor, has been the subject of some disagreement amongst the courts. Most courts hold that an attorney is not disqualified "merely because it is possible to conceive a set of circumstances under which [the interests of the attorney and the estate] might clash," or because of a merely "hypothetical" conflict of interest. *In re Leslie Fay*, 175 B.R. at 532. Some courts have disqualified attorneys on the basis of "potential" conflicts of interest, where the interests of the attorney and the estate do not yet "clash," but the likelihood for such a clash is so "real" that it moves out of the realm of the hypothetical. *Id.* Still other courts only disqualify counsel on the basis of an "actual" conflict of interest, where the interests of the attorney and the estate do indeed clash. *Id.*

*B. Disclosure of connections with the debtor and parties in interest under Rule 2014*.

Where an attorney seeks to serve as DIP counsel in a bankruptcy case, Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule" or "Rule") 2014 requires, among other things, that the attorney set forth, to the best of its knowledge, all of the attorney's "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States [T]rustee."

*C. Disqualification of DIP's counsel.*

Failure to meet either of the twin requirements of § 327(a) is, of course, grounds for disqualification of counsel. *In re Apex Oil Co.*, 128 B.R. 671, 673 (Bankr. E.D. Mo. 1991). Likewise, failure of counsel to disclose connections with the Debtor and other parties in interest as required under Bankruptcy Rule 2014 is grounds for disqualification (but lesser sanctions are also appropriate, depending on the facts). *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992); *In re Enron Corp.*, 2003 WL 223455 (Bankr. S.D.N.Y. 2003); *In re Combe Farms*, 257 B.R. 48 (Bankr. D. Idaho 2001) (reducing fees by 10% for failure to make adequate disclosure under Rule 2014).

Initially, counsel for the debtor-in-possession bears the burden of establishing that it meets all of the requirements for employment by the estate. *In re Huntco, Inc.*, 288 B.R. 229, 232 (Bankr. E.D. Mo. 2002). Nevertheless, the Court should afford some deference to the Debtor's choice of counsel. *Id.* Moreover, any party moving for disqualification of debtor-in-possession counsel bears the burden of proving, by a preponderance of the evidence, that the requirements of § 327 and/or Rule 2014 are not satisfied. *In re Cleveland Trinidad Paving Co.*, 218 B.R. 385, 388 (Bankr. N.D. Ohio 1998). Thus, here, Wainscott must show, by a preponderance of the

evidence, that RMF is disqualified from representing the Debtor in this case. *See id.* For the reasons discussed below, it does not appear that Wainscott has met its burden.

II. The basis for Wainscott's motion.

Wainscott puts forth four (4) basic reasons why RMF should be disqualified from serving as counsel for the Debtor's estate in this case by reason of disabling conflicts of interest, each of which will be addressed in turn:

1. The family relationship between Michael and Kenneth.

2. The long-standing relationship between Brodsky and RMF.

3. RMF's (1) failure to bring any proceeding to challenge either 4B's claim or the security interest supporting it and (2) opposition to the appointment of an examiner.

4. The non-disclosure by RMF or the Debtor of either Michael's family relationship with Kenneth or Kenneth's connection to Sandata, Brodsky, or RMF.

III. The family relationship between Michael and Kenneth does not create a disabling conflict of interest.

The primary basis for Wainscott's contention that the father-son relationship between Michael and Kenneth creates a disabling conflict of interest seems to be Wainscott's unsupported speculation that Kenneth "might" somehow get paid more as 4B's recovery in this case gets larger.

Now, if it were indeed so that Kenneth's compensation got larger as 4B's recovery got larger, then that would seem to create an actual, meaningful incentive for Michael and RMF to work to maximize 4B's recovery at the expense of this estate, so that Michael's son could make more money (paternal instincts being what they are). However, Wainscott has not shown that this is so. Wainscott has proffered no evidence indicating that a financial gain for 4B would at all benefit Sandata or those employed by Sandata. *Brodsky* would likely be enriched, because of his

equity interest in 4B, but nothing in the record indicates how Brodsky's enrichment from his ownership of 4B would inure to the benefit of *Sandata* in general or *Kenneth* in particular. Indeed, nothing in this record speaks to: (1) whether or to what extent the financial and other aspects of 4B's and Sandata's business operations are connected; or (2) the particulars of the compensation arrangement between Kenneth and Sandata. For all that can be concluded from Wainscott's papers, it is just as likely as not that Kenneth would gain nothing even if 4B were to walk away with the whole estate in this case. Wainscott's burden, though, is to prove that it is *more likely than not* that Kenneth would benefit from 4B's enrichment in such a way as to give Michael and RMF an incentive to maximize 4B's recovery at the expense of the estate at large.

Wainscott also points to the fact that Kenneth represented 4B in the course of the business dealings that led to the formation and capitalization of the Debtor. This fails to establish a disabling conflict. Indeed, if RMF itself had represented Brodsky in the past, that alone would not create a disabling conflict—let alone Kenneth, who has never been formally associated with RMF. *See In re AroChem Corp.*, 176 F.3d at 624 (explaining past conflicts are not alone enough to presently disqualify counsel). Nor is the fact of Kenneth's relationship to his father, without more, a bar to RMF's retention.

Therefore, in light of the foregoing, it does not appear that Wainscott has met its burden of showing that the familial relationship between Michael and Kenneth somehow gives Michael or RMF some incentive to act contrary to the best interests of the Debtor's estate in this case, or even the perception of one, nor does it create an "adverse interest" to the estate. *Cf. In re Granite Partners, L.P.*, 219 B.R. 22 (Bankr. S.D.N.Y. 1998) (intimating that the "perception" of an adverse interest is enough to disqualify the estate's attorney).

IV. RMF's past relationship with Brodsky does not create a disabling conflict.

Wainscott has not met its burden to show that RMF's relationship with Brodsky creates a conflict of interest. For one, the Second Circuit has held that the mere fact that an attorney represented an adverse interest *in the past* does not alone create a disabling conflict of interest *in the present. In re AroChem Corp.*, 176 F.3d at 624. Thus, the fact that RMF represented Brodsky in the past does not mean that it is presently disabled from representing the Debtor here.

V. RMF's failure to challenge 4B's claims or security interest, and its initial opposition of the examiner's appointment, do not indicate a disabling conflict of interest.

Wainscott, in its first set of papers pertaining to this motion, seemed to be asserting outright that RMF *currently* represents Brodsky and/or 4B. If that is the case, then there might be a disabling conflict of interest. *See* 11 U.S.C. §§ 101(14), 327(a). However, the items on the record here seem to indicate that, at present, there is no formal representation by RMF of either Brodsky or 4B. Nevertheless, it is possible for an attorney to represent one party on paper, but to represent another party in substance, if the attorney's actions in the case indicate that the attorney is really motivated by a desire to serve the other party. Thus, while RMF *formally* represents the Debtor's estate in this case, it could be considered to be "representing" Brodsky and 4B if it has been acting, in substance, for their benefit, and not the estate's. *See In re Kendavis Industries Int'l, Inc.*, 91 B.R. 742 (Bankr. N.D. Tex. 1988).

Wainscott points to two (2) factors indicating that RMF is, in substance, serving 4B and Brodsky, rather than the Debtor's estate: (1) RMF has not challenged 4B's claim or security interest, despite what Wainscott believes are strong legal arguments in favor of doing so; (2) RMF initially opposed appointment of the Examiner in this case to look into whether 4B's debt could be recharacterized as equity.

All arguments as to the validity of 4B's debt and security interest aside, it seems that one crucial fact obviates the notion that RMF's failure to pursue avoidance actions against 4B stemmed from conflicting loyalties: The Debtor here, through RMF, has authorized Wainscott to bring any necessary adversary proceeding to challenge 4B's claim and security interest. This seems to indicate that RMF sincerely believed that bringing any proceeding to challenge 4B's claims simply would not be worth the effort and expense to the estate. Similarly, the fact that RMF essentially acquiesced to the Examiner's appointment, once Wainscott had agreed to bear the costs, indicates that RMF's opposition stemmed from a desire to safeguard the resources of the estate, and not from some misplaced loyalty to 4B or Brodsky.

Therefore, in light of the foregoing, it seems that Wainscott has not met its burden of showing that RMF was acting in the best interests of 4B and Brodsky, and not of the Debtor, by omitting to challenge 4B's claims and by initially opposing the Examiner's appointment.

VI. Wainscott has not met its burden to show that RMF's non-disclosure of certain particulars of the connections between the Debtor, Michael, Kenneth, Brodsky, and Sandata merits disqualification.

The scope of an attorney's disclosure obligations under Rule 2014, discussed above, are considerably broad. Again, Rule 2014 requires the prospective attorney for the DIP to disclose "[a]ll facts that may have any bearing on the disinterestedness of [the attorney]," if known by the attorney, even if those facts would not necessarily create a disabling conflict of interest. This is because it is for the Court, not the attorney, to decide whether a disabling conflict is present; the Court needs access to all salient facts in order to make that determination. *See In re Leslie Fay*, 175 B.R. 525.

Here, RMF did not disclose all the intricacies of Brodsky's connections to 4B, Sandata, and the Debtor, nor the family relationship between Michael and Kenneth, nor Kenneth's

employment with Sandata. As for the particulars of Brodsky's involvement with 4B, RMF did disclose that Brodsky was an "indirect principal of the Debtor," that RMF had a long-standing professional relationship with him, and that RMF had a policy of giving him a discount on its prevailing rates. The Debtors schedules and related papers, which RMF prepared and filed with this Court, do set forth that 4B is a 50% stakeholder in, and large creditor of, the Debtor, and that Brodsky is a member of 4B. Thus, RMF's disclosures concerning Brodsky, together with Debtor's petition and schedules, did present the Court with enough information to evaluate whether RMF's relationship with Brodsky presented a disabling conflict of interest, so that any non-compliance with Rule 2014 here was merely technical, at most. *See Matter of Futuronics Corp.*, 655 F.2d 463 (2d. Cir. 1981) (construing substantially similar statutory predecessor to Rule 2014 and explaining that merely technical non-compliance with disclosure requirements might be excused where the relevant facts are "generally disclosed" to the Court, and where the Court knew the relevant facts at the time of appointment of counsel.)

As for the family relationship between Michael and Kenneth, and Kenneth's relationship with Sandata, RMF did have an obligation under Rule 2014 to disclose this, if it knew about them, since they are "connections" between RMF and parties in interest to the case. *See In re Neidig Corp.*, 117 B.R. 625 (Bankr. D. Colo. 1990). Nevertheless, Rule 2014 requires that the attorney disclose such connections "to the best of [his or her] knowledge." Wainscott, the party bearing the burden of proof here, has not shown that Michael Faltischeck, or anyone else at RMF, actually *knew* of Kenneth's connection with Sandata, or of Sandata's connection with Brodsky, or any possible connection with the Debtor. It simply does not follow, *ipso facto,* that Michael or anyone else at RMF must necessarily know where Kenneth is employed on any given day, just because Kenneth is Michael's son, or that they must necessarily be aware of all of

Brodsky's corporate holdings, just because he is a long-standing client of RMF. Thus, in light of this, Wainscott has not met its burden to show that RMF even knew about Kenneth's connection with Sandata and Brodsky, so as to give rise to an obligation to disclose this information in RMF's Rule 2014 affidavit.

Moreover, even if RMF did know of the connection and failed to disclose it, that would not necessarily mandate *disqualification*, but in that case the Court would have to apply its discretion in order to address the matter appropriately. *See In re Combe Farms*, 257 B.R. 48 (Bankr. D. Idaho 2001) (reducing fees by 10% for failure to make adequate disclosure under Rule 2014).

**Conclusion and Order**

In light of the foregoing, Wainscott's Disqualification Motion is DENIED.

***So ordered.***

United States Bankruptcy Court Eastern District of New York

**Dated: Central Islip, New York**
**October 11, 2012**

Dorothy Eisenberg

**Dorothy Eisenberg**
**United States Bankruptcy Judge**